UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                             CASE NO. 09-10646

STEPHEN JOHN BANDI                                              CHAPTER 7

    DEBTOR                                                              SECTION "B"
**************************************************************************
PATRICE BADDOO GREEN AND
BRIAN GREEN
       PLAINTIFFS

VERSUS                                                                          ADV. P. NO. 09-1072

STEPHEN JOHN BANDI
       DEFENDANT

## MEMORANDUM OPINION

This matter came before the court on May 25, 26 and 27, 2010 as a trial on the complaint of Plaintiffs Patrice Baddoo Green and Brian Green (the "Greens") against the debtor Stephen Bandi under sections 523(a)(2)(A) and 523(a)(6) of the Bankruptcy Code challenging the dischargeability of the judgment the Greens hold against the debtor. For the reasons assigned below, based on the evidence presented at trial and the arguments of the parties, the complaint is dismissed.

**I.**    **Background Facts**

The dispute between the parties arises out of the construction of a home the Greens purchased from Heritage New Orleans, LLC, a Louisiana limited liability company associated with the debtor. After many problems with the construction of the home, the Greens sued Hertiage and the debtor in state court. The Greens obtained a consent

judgment against the debtor on November 27, 2007. The judgment detailed several steps that Heritage was to take in furtherance of completing its obligations to the Greens with respect to the home's construction, and it also provided that the Greens were to retain a new contractor to finish the job.[1]

After the problems with the construction were not resolved by the consent judgment, the Greens sued Heritage, the debtor, the debtor's brother, and an attorney representing Heritage, again in state court. The suit resulted in a default judgment against the debtor in the amount of $191,325.00 plus costs, attorney's fees and interest from the date of the judgment.[2] Of the total judgment, $100,000 was damages for bad faith, breach of contract, fraud, emotional distress and inconvenience. The state court judgment was entered on March 9, 2009, the same day the debtor filed his Chapter 7 petition. From the testimony and evidence introduced at trial, it was apparent that there were many problems with the home's construction and that due to those problems, the debtor and Mr. Green developed a very contentious and adversarial relationship.

## II. Legal Analysis

The complaint was brought under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6). The Greens, as the creditors objecting to the dischargeability of a debt under either of these §523(a) dischargeability exceptions, have the burden of proving their case by a

---

[1] Exhibit 21. For unknown reasons, the Greens did not retain a new contractor but continued to use Heritage and the debtor to work on the project.

[2] Exhibit 20.

preponderance of the evidence.³

### A. Section 523(a)(2)(A)

Debts arising from "false pretenses, a false representation, or actual fraud" are nondischargeable.⁴ "When defining the elements of nondischargeability, the Fifth Circuit has distinguished between actual fraud on one hand and false pretenses and false representations on the other."⁵ To prove false pretenses the creditor must show there has been "1) a knowing and fraudulent falsehood, 2) describing past or current facts, 3) that was relied upon by the other party."⁶ To prove actual fraud, the creditor must show that: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on the representations; and (5) that the creditor sustained losses as a proximate result of the representations.⁷

---

³ *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

⁴ 11 U.S.C. § 523(a)(2)(A).

⁵ *In re Quinlivan*, 347 B.R. 811, 820 (Bankr. E.D.La 2006) (citing *RecoverEdge v. Pentecost,* 44 F.3d 1284, 1292 (5th Cir. 1995); *In re Allison,* 960 F.2d 481, 484-85 (5th Cir. 1992); *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991)).

⁶ *RecoverEdge*, 44 F.3d at 1293.

⁷ *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005), *citing*, *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001).

Fraud can be based on any type of conduct calculated to convey a misleading impression; thus, it is not relevant whether the representation is express or implied.[8] A finding of fraud does not require an affirmative statement and may be predicated on a failure to disclose a material fact.[9] Bankruptcy courts have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation actionable under Section 523(a)(2)(A).[10]

With respect to the third element for actual fraud, an intent to deceive can be inferred from a "reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation."[11] However, if the debtor made a representation that was based on a justifiably honest belief that it was true, that does not rise to the level of an intent to deceive.[12]

Section 523(a)(2)(A) requires justifiable, not reasonable reliance.[13] As opposed to the objective reasonable man, justification is a subjective inquiry, depending on the

---

[8] *In re Acosta*, 2003 WL 23109775 at *13 n.166 (E.D.La. 2003), *citing*, *In re Wyant*, 236 B.R. 684, 695 (Bankr. D. Minn. 1999).

[9] *In re Docteroff*, 133 F.3d 210, 216 (3d Cir. 1997).

[10] *In re Acosta*, 2003 WL 23109775 at *13, *citing*, *In re Docteroff*, 133 F.3d at 216; *In re Wyant*, 236 B.R. at 695.

[11] *In re Acosta*, 406 F.3d at 372, *citing In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995).

[12] .*In re Acosta*, 406 F.3d at 372*, citing*, *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997).

[13] *Field v. Mans*, 516 U.S. 59, 74-75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), *citing*, *In re Vann*, 67 F.3d 277 (11th Cir. 1995).

4

particular plaintiff and the particular circumstances.[14] Justifiable reliance is gauged by an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.[15] It is only where, under the circumstances, the facts should be apparent to one of the plaintiff's knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own.[16]

The Greens presented testimony and evidence regarding three main areas where they claim the debtor deceived them: 1) their home was not completed by the originally promised completion date; 2) after the consent judgment was entered into, the debtor did not follow through with the work he agreed to perform in the consent judgment; and 3) the electricity and water in the home were not connected even though they appeared to be connected at the walk through inspection.

As to the first two problems, although the court is sympathetic to the Greens' complaints, the evidence presented did not carry the burden of proving by a preponderance of the evidence that the debtor committed fraud or made false representations within the meaning of § 523(a)(2)(A). It is clear from the witnesses' testimony that the construction project was a disaster, both before and after the consent

---

[14] *Field*, 516 U.S. at 70-71.

[15] *In re Vann*, 67 F.3d at 281.

[16] *Id.*

judgment was entered. The house was not completed on time, and it doesn't seem likely that it would have been completed on time even absent the change orders that the debtor blames for the delays. A contractor failing to complete a project on time is unfortunately no unusual event, however, and in this case the court does not find that the failure merits an exception to discharge under § 523(a)(2)(A). Similarly, the debtor's failure to live up to the promises he made by entering into the consent judgment does not constitute fraud for purposes of denying the discharge of a debt; no evidence was offered to show either that the debtor entered into the consent judgment with the intent to deceive the Greens, or that at the time he entered into the consent judgment, he knew that the promises he made in the judgment were false. Both are requirements for proving a case under § 523(a)(2)(A).

With the third set of issues, the water and electricity not being connected at the time of the closing, the Greens are closer to the mark, but ultimately, they do not carry their burden of proof. Between the original date the house was supposed to be ready, August 31, 2005 and the date the act of sale was passed, September 24, 2007, the house was still not completed.[17] The consent judgment, providing that Heritage would take steps to rectify the problems and that the Greens would hire a new contractor to fix the problems, was entered into on November 27, 2007, and the default judgment in the second lawsuit was entered on March 9, 2009.

---

[17] Exhibit 11. The appraisal of the house prior to sale dated July 12, 2007 states that, "the subject is under construction and nearing completion."

Mr. Green testified that the debtor led him to believe the water and electricity were operational when the final walk through prior to the act of sale was completed. He stated that he later found out that the electricity was not connected and that more work would need to be done before the power company could make a connection to the house.[18] Mr. Green also testified that he learned after the act of sale that the plumbing fixtures in the house were set into the sheet rock but that behind the sheet rock, they were not attached to any pipes.

Mr. Hazelwood, a former employee of the debtor, testified that he worked on the Green's house, and that although the house appeared to be fairly complete when he first saw it, once he got inside, he discovered that there was no plumbing inside the walls, even though the walls were finished. He further testified that the electricity was not finished either. Mr. Hazelwood also testified that an outside pipe was cut and buried in the ground to look like it was connected to something, but it was in fact just run into a hole in the ground.[19] Mr. Hazelwood further testified that the electricity was never connected to the house while he worked on it.[20]

The debtor countered the testimony of Mr. Green and Mr. Hazelwood with the testimony of his brother, Charles Bandi, who worked on the Green's property. Charles Bandi testified that he had obtained all the proper permits, and the plumbing problems

---

[18] Exhibit 18. Letter from Entergy New Orleans, Inc. detailing problems and an estimate of the costs to provide service to the house dated November 21, 2007.

[19] Exhibit H-1. Testimony of James W. Hazelwood, Jr.

[20] Exhibit 12. Photographs of electrical pole with no wires running to house.

were due to change orders and the electrical problems were in the process of being fixed when the Greens decided to have the power company do the work instead. The debtor testified to the same effect.

The parties to this adversary have a very contentious relationship. Charles Bandi is the brother of the debtor, and Mr. Hazelwood was not on good terms with the debtor because he was an ex-employee who had not been paid. In short, although the court is not accusing anyone of false testimony, each side had two witnesses to back its version of the events, and there isn't any way for the court to know what really happened. Because the Greens, as the party seeking to exempt the debt from discharge, bear the burden of proving their claim by a preponderance of the evidence, their claim under § 523(a)(2)(A) fails.

### B. Section 523(a)(6)

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."[21] Generally, this subsection is used to except from discharge claims related to torts and not to contracts.[22] The injury that the Greens complain they sustained is not of the type usually addressed under § 523(a)(6). "The classic case for application of the willful and malicious injury exception to discharge under 11 U.S.C.A. § 523(a)(6) seems to arise when the debtor intentionally injures a creditor, and the creditor seeks to make nondischargeable a

---

[21] 11 U.S.C. §523(a)(6).

[22] 4 Collier on Bankruptcy ¶ 523.12[1] at p. 523-92.2 (15th ed. rev. 2006).

judgment won in a state court tort action."[23] Cases involving injuries stemming from assault, the debtor's obligation to a former employee for sexual harassment, libel, fraudulent inducement of a patient to submit to surgery where the debtor represented himself to be a doctor, and injuries as a result of the debtor's drag racing, for example are typical of debts excepted from discharge under this subsection.[24] Although atypical, the Greens allege that the debtor's actions in breaching the contract for the construction of their home were willful and malicious. The allegation without proof is insufficient. The Greens presented no evidence to support the allegation, and their post-trial brief dedicated one unpersuasive paragraph to addressing this count of their complaint.

Following the Supreme Court decision in *Kawaauhau v. Geiger*,[25] the Fifth Circuit set forth a two-pronged test to determine dischargeability under 523(a)(6).[26] First, an injury is "willful" where there is either an objective substantial certainty of harm or a subjective motive to cause harm."[27] Second, an injury is "malicious" if it is "an act done

---

[23] AMJUR Bankruptcy § 3656 (citations omitted).

[24] *Id.*; *See e.g. Kawaauhau v. Geiger* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (doctor's negligence in the amputation of a patient's leg as a result of medical malpractice did not satisfy the "willful and malicious" element); *In re Miller*, 156 F.3d 598 (5th Cir. 1998) (injury caused by the misappropriation of proprietary information and misuse of trade secrets was not sufficient to find a discharge exception under § 523(a)(6)).

[25] 523 U.S. 57 (1998).

[26] *In re Miller*, 156 F.3d 598, 603 (5th Cir. 1998).

[27] *Id.*; *see also In re Keaty*, 397 F.3d 264, 270 (5th Cir. 2005).

with the actual intent to cause injury."[28] The court finds that the Greens did not prove that the debtor acted willfully or maliciously within the meaning of § 523(a)(6) as interpreted by the Fifth Circuit. No subjective motive to cause harm was shown, nor was there evidence that the acts of the debtor were of such a nature that there was an objective substantial certainty of harm. The elements required for the court to find a non-dischargeable debt under § 523(a)(6) were not proved by the Greens at the trial by a preponderance of the evidence, and the court finds that the debtor's actions do not rise to the level of an "injury" within the meaning of §523(a)(6).

### III. Conclusion

For the above stated reasons, the Greens have not proved their case under either section 523(a)(2)(A) or (a)(6). Accordingly their complaint is dismissed. A separate order to this effect will be entered.

New Orleans, Louisiana, October 13, 2010.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge

---

[28] *Keaty*, 397 F.3d at 270.